IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMERICAN CHEMICAL SOCIETY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:17cv0726 (LMB/JFA) |
| | ) |
| SCI-HUB d/b/a WWW.SCI-HUB.CC, | ) |
| JOHN DOES 1–99, | ) |
| | ) |
| Defendants. | ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment pursuant to

Federal Rule of Civil Procedure 55(b). (Docket no. 16). In this action, plaintiff American

Chemical Society ("plaintiff" or "ACS") seeks: (1) a default judgment against defendant Sci-Hub

d/b/a www.sci-hub.cc ("defendant" or "Sci-Hub") as to Counts I and III of its first amended

verified complaint; (2) to dismiss all remaining claims against Sci-Hub without prejudice; and

(3) to dismiss all claims against separate defendants John Does 1–99 without prejudice. Pursuant

to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his

proposed findings of fact and recommendations, a copy of which will be provided to all

interested parties.

### Procedural Background

On June 23, 2017, plaintiff filed its original complaint against John Does 1–99, alleging

direct and contributory copyright infringement, trademark counterfeiting and infringement, and

conversion. (Docket no. 1, ¶ 1). On July 7, 2017, plaintiff filed its first amended verified

complaint, naming Sci-Hub d/b/a www.sci-hub.cc and John Does 1–99 as defendants

(collectively "defendants"), alleging direct and contributory copyright infringement, trademark counterfeiting and infringement, and conversion. (Docket no. 4, ¶ 1). On July 17, 2017, plaintiff moved for service by publication, seeking to publish a notice in either *The Washington Post* or *The Washington Times*, and to serve defendants by e-mail. (Docket no. 5). This court granted plaintiff's motion for service by publication on July 17, 2017. (Docket no. 8). On August 1, 2017 plaintiff filed a declaration demonstrating compliance with this court's order granting plaintiff's motion for service by publication. (Docket no. 9). On August 18, 2017, plaintiff requested entry of default (Docket no. 12), which was entered on August 21, 2017 (Docket no. 13). On August 22, 2017, this court ordered plaintiff to file a motion for default judgment with a hearing set for 10:00 a.m. on Friday, September 22, 2017. (Docket no. 15). Plaintiff filed this motion for default judgment and accompanying memorandum in support on September 1, 2017. (Docket nos. 16–17).

### Factual Background

The following facts are established by the first amended verified complaint (Docket no. 4) ("FAVC"), the memorandum in support of plaintiff's motion for default judgment (Docket no. 17), and the declaration of David E. Weslow (Docket no. 17-1) ("Weslow Decl."). ACS was founded over 140 years ago and chartered by Congress as a federal corporation in 1938. (FAVC ¶ 5). ACS publishes scientific journals, magazines, books and databases, convenes major research conferences, and provides educational, science policy, and career programs in chemistry. (FAVC ¶ 3). ACS also supports the professional development of students and science teachers, awarding more than $20 million every year in grants for basic research. (FAVC ¶ 3). Sci-Hub, which does business under the domain "sci-hub.cc," as well as several subdomains, operates a pirated/spoof site which reproduces ACS's copyright-protected scientific

2

articles.  (FAVC ¶¶ 8, 10).  Sci-Hub states that its mission is to provide "free access to scientific literature," hosting "more than 58 million peer-reviewed scientific articles for free download" to that end.  (FAVC ¶ 13).

ACS publishes over 50 peer-reviewed journals with cutting-edge articles across a broad spectrum of scientific disciplines.  (FAVC ¶ 21).  Every year, over 100,000 authors and their research teams from the community of scientists worldwide submit their work for consideration in these journals.  (FAVC ¶ 22).  Last year, ACS published more than 40,000 of the most significant submissions.  (FAVC ¶ 22).  Today, virtually all of ACS's publications are disseminated digitally via electronic licenses over the Internet, at acs.org.  (FAVC ¶ 24).  Last year, 27 million unique visitors came to the ACS publication platform, performed 51 million searches, and made 94 million separate article requests.  (FAVC ¶ 24).  ACS journals and eBooks are accessible to authorized users electronically at more than 5,000 academic, business, and corporate institutions worldwide, as well as to the ACS's nearly 157,000 members.  (FAVC ¶ 25).  ACS's publications contain creative material wholly original to ACS and include substantial copyrightable subject matter under the copyright laws of the United States.  (FAVC ¶ 27).  The U.S. Copyright Office database reports that ACS publications are covered by over 9,000 copyright registrations issued by the U.S. Copyright Office.  (FAVC ¶ 28, Docket no. 4-1 at 11–50).  ACS also promotes and provides its publications to consumers through the use of distinctive trademark titles that have been registered with the U.S. Patent and Trademark Office ("ACS Marks").  (FAVC ¶¶ 30–31, Docket no. 4-1 at 51–219).

Sci-Hub presently operates through the domain name "sci-hub.cc," and claims to "challeng[e] the status quo" by providing "access to hundreds of thousands [of] research papers every day, effectively bypassing any paywalls and restrictions."  (FAVC ¶ 33).  Sci-Hub also

3

operates two websites located at http://pubs.acs.org.sci-hub.cc and http://acs.org.secure.sci-hub.cc (collectively, "the Pirated/Spoofed Sites"), which are nearly identical to ACS's website in form and content, including hosting and providing copies of hundreds of thousands of copyright-protected scientific journals that are owned by ACS, as well as replicating the ACS Marks. (FAVC ¶ 4). The Pirated/Spoofed Sites almost completely replicate the content, form, and function of plaintiff's website, including ACS's searchable database of copyright protected scientific journals, searching ACS's copyrighted works by topic, and the ACS Marks. (FAVC ¶¶ 41–46). Sci-Hub previously published at sci-hub.org before this domain name was disabled, and Sci-Hub has previously and/or is now publishing the Sci-Hub Website via other "sci-hub" formative domain names such as sci-hub.net, sci-hub.io, sci-hub.ac and/or sci-hub.onion. (FAVC ¶ 50).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

4

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. ACS brings this cause of action under 17 U.S.C. § 101, *et seq*. (the "Copyright Act"), 15 U.S.C. § 1114(1) (the "Lanham Act"), and conversion under Virginia law, and alleges that this court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1338(a) (any act of Congress relating to patents, copyrights, and trademarks), and 1367 (supplemental jurisdiction). (FAVC ¶¶ 15–16).

ACS alleges that this court has personal jurisdiction over Sci-Hub because the Pirate/Spoofed Sites reproduce nearly the entire contents of ACS's legitimate website, acs.org, which is hosted on servers controlled by ACS in Ashburn, Virginia and Vienna, Virginia. (FAVC ¶ 17). Moreover, ACS alleges that Sci-Hub directed the acts complained of herein toward the District and utilized instrumentalities in this District in that Sci-Hub appears to have gained unauthorized access to ACS's password-protected website maintained in this District so as to copy and distribute ACS's intellectual property through the Pirated/Spoofed Sites that operate on a domain name that is also maintained in this District. (FAVC ¶ 18). ACS also alleges that a substantial part of the events giving rise to the claims occurred in this District and the .cc domain name registry operator, VeriSign Inc., is located in this District. (FAVC ¶ 18). Given the uncontested allegations that Sci-Hub gained unauthorized access to ACS's website maintained in this District and distributed ACS's intellectual property through the Pirated/Spoofed Sites operated on a domain name maintained in this District, and it appears that a substantial portion of the activity complained of has taken place in this District, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction

5

over this action, that the court has personal jurisdiction over Sci-Hub, and that venue is proper in this court.

## Service

Upon order of this court (Docket no. 8), plaintiff published an order providing notice of the action in *The Washington Times* on July 27, 2017, and emailed a copy of the order to service@todaynic.com, admin@sci-hub.io, support@scihub.org, sci-hub.org@gmail.com, and 522ab14bo3mfc7dy@5225b4d0pi3627q9.private.whois.net on July 17, 2017. (Docket no. 12-1, ¶¶ 4–5). Additionally, plaintiff filed an affidavit for service of process on the Secretary of the Commonwealth of Virginia on August 14, 2017. (Docket no. 11). Sci-Hub appears to have received actual knowledge of the lawsuit, as evidenced by a June 28, 2017 tweet from the @Sci_Hub Twitter account, stating: "American Chemical Society files suit against Sci-Hub . . . ." (Docket no. 12-1, ¶ 6).

Based on these facts, the undersigned recommends a finding that Sci-Hub has been served properly and that it has been provided with sufficient notice of this action and the pending motion for default judgment.

## Grounds for Entry of Default

Pursuant to Federal Rule of Civil Procedure 12 and as stated on the summons in a civil action, a responsive pleading is due within 21 days after service of the summons and complaint. Sci-Hub was served with a summons and notice of the complaint by email on July 17, 2017 and by publication on July 27, 2017. (Docket no. 12-1, ¶ 5). Sci-Hub has not filed a responsive pleading and the time for doing so has expired.

Based on these facts, the undersigned magistrate judge recommends a finding that the Clerk properly entered a default as to Sci-Hub.

## Liability

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because Sci-Hub is in default, the factual allegations in the FAVC are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

**Copyright Infringement**

The uncontested allegations establish Sci-Hub's liability for copyright infringement. To establish a case of direct copyright infringement, plaintiff must establish two elements: (1) ownership of the copyright; and (2) that the alleged infringer violated at least one exclusive right granted to the copyright holder. 17 U.S.C. §§ 106, 501(a); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

First, the facts set forth in the FAVC establish that ACS owns the copyrights in the infringed works. ACS publishes over 50 peer-reviewed journals across a broad spectrum of scientific disciplines, including more than 40,000 submissions from over 100,000 authors last year. (FAVC ¶¶ 21–22). In addition, ACS publishes approximately 30 eBooks each year. (FAVC ¶ 23). These publications contain creative work wholly original to ACS and include substantial copyrightable subject matter under the copyrights laws of the United States, as provided for in ACS's Bylaws.[1] (FAVC ¶ 27). The U.S. Copyright Office database reports that ACS publications are covered by over 9,000 copyright registrations issued by the U.S. Copyright Office. (FAVC ¶ 28, Docket no. 4-1 at 11–50). At all times relevant hereto, ACS has been and

---

[1] ACS's Bylaws provide: "For any writing of an author published by the SOCIETY in any of its books, journals, or other publications, the SOCIETY shall own the copyright for the original term and any renewal thereof except (1) in the case of a work prepared by an officer or employee of the United States Government as part of that person's official duties, or (2) in the case of a work prepared solely by employee(s) of a foreign country's government, or entity thereof, which reserves copyright as directed by the laws of that country, or (3) in those instances in which the SOCIETY's Executive Director deems the owning or acquisition of copyright in a given work to be impractical or impossible." (FAVC ¶ 28).

7

still is the owner and proprietor of all right, title, and interest in ACS's copyrighted works. (FAVC ¶ 29).

Second, the facts set forth in the FAVC establish that Sci-Hub has not only copied elements of ACS's copyrighted works, but in many cases the entirety of those works are distributed by Sci-Hub at pubs.acs.org.sci-hub.cc and acs.org.secure.sci-hub.cc. (FAVC at ¶¶ 39, 45). The Pirated/Spoofed Sites appear to almost completely replicate ACS's website, including ACS's searchable database of copyright protected scientific journals. (FAVC ¶¶ 41–42). The Pirated/Spoofed Sites also allow access to unauthorized copies of all, or substantially all, of ACS's copyrighted works for free download. (FAVC ¶¶ 44–45). These uncontested allegations establish that Sci-Hub has systematically infringed ACS's copyrighted works.

**Trademark Counterfeiting**

The uncontested allegations also establish Sci-Hub's liability for trademark counterfeiting. Under § 32(1) of the Lanham Act, it is unlawful for any person, without the consent of the registrant, to "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); *see Associated General Contractors of America v. Stokes*, 2013 WL 1155512, at *3 (E.D.Va. Mar. 19, 2013). To state a claim for counterfeiting, a plaintiff must show that (1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offering for sale, or distribution of goods, and (4) the use of the counterfeit mark was likely to confuse consumers. *Match.Com, L.L.C. v. Fiesta Catering Int'l Inc.*, 2013 WL 428056, at *6 (E.D.Va. Jan. 31, 2013). The Lanham Act defines a

8

counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." 15 U.S.C. § 1127 (2012); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007).

As an initial matter, ACS promotes and provides its publications to consumers through the use of distinctive trademark titles that have been registered with the U.S. Patent and Trademark Office, which serves as conclusive or *prima facie* evidence of the validity of the marks and of ACS's exclusive right to use the marks in association with registered goods and services throughout the United States. (FAVC ¶¶ 30–31, Docket no. 4-1 at 51–219); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984). Moreover, defendant's actions appear willful, as evidenced by statements on the Sci-Hub website, including that it is "challenging the status quo" by providing "access to hundreds of thousands [of] research papers every day, effectively bypassing any paywalls and restrictions." (FAVC ¶ 33).

Second, defendant's intentional replication of the ACS website demonstrates that it was aware that the ACS Marks were counterfeit. (FAVC ¶ 66). Third, defendant's use of the ACS Marks occurred in connection with the distribution of goods. Defendant's use of the trademark was seen in its attempt to divert users and revenues away from ACS by replicating and distributing ACS's copyrighted works without authorization. (FAVC ¶¶ 68, 69). Moreover, the Pirated/Spoofed Sites include repeated links for donations to Sci-Hub to support its continued infringement of ACS's copyrights and trademarks. (FAVC ¶ 48).

Fourth, the use of the ACS Marks is likely to confuse consumers. This court has held that there is a presumption of likelihood of confusion where a party produces counterfeit goods. *See Associated General Contractors of America*, 2013 WL 1155512, at *3 (citing 15 U.S.C. § 1117(b)-(c) (2012); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)).

Given that the Pirated/Spoofed Sites look and function nearly identically to ACS's website, they would likely cause the public to believe that Sci-Hub's distribution of the ACS scientific articles and/or third-party publications is authorized, sponsored, or approved by ACS, or that Sci-Hub is affiliated or otherwise related with ACS. (FAVC ¶ 70). These uncontested allegations establish that Sci-Hub is liable for trademark counterfeiting.

**Relief Sought**

ACS seeks a permanent injunction against Sci-Hub, enjoining it from using or misappropriating ACS's copyrighted works and the ACS Marks, as well as $4,800,000 in statutory damages for copyright infringement. For the reasons stated below, the undersigned recommends that an order be entered granting both forms of relief.

**Permanent Injunction**

ACS seeks a permanent injunction against Sci-Hub, enjoining it from using or misappropriating ACS's copyrighted works and the ACS Marks. The Copyright Act provides the court with the power to grant injunctions in order to prevent or restrain infringement of a copyright. 17 U.S.C. § 502(a). Similarly, the Lanham Act provides the court the power to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). In order for the court to provide injunctive relief, "a plaintiff must show (1) irreparable injury, (2) remedies at law are inadequate to compensate for that injury, (3) the balance of hardships between the plaintiff and defendant warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156–57 (2010)).

10

As to the first and second prongs, ACS has established that it has suffered an irreparable injury for which it has no adequate remedy at law. ACS has demonstrated that Sci-Hub misappropriated thousands of ACS's copyrighted works—works typically available only to authorized users or ACS's members—and made them available for free over the Internet, along with the ACS Marks. (FAVC ¶¶ 21–25, 42–45). Where, as here, the infringed works are not tangible items that can be retrieved or destroyed, courts recognize that "[t]he harm cannot be 'repaired,' which makes such harm irreparable." *See EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 510 (E.D. Va. 2009). There is also a clear likelihood of future infringement, as evidenced by Sci-Hub's professed purpose of "challenging the status quo" by providing "access to hundreds of thousands [of] research papers every day, effectively bypassing any paywalls and restrictions." (FAVC ¶ 33).

Third, the balance of equities favors a permanent injunction. A permanent injunction would stop Sci-Hub from illegally sharing ACS's copyrighted works and misappropriating the ACS Marks. On the other hand, the hardship for plaintiff is obvious given discovery and enforcement scenarios, requiring plaintiff to constantly monitor defendant's conduct. *See EMI Apr. Music, Inc.*, 618 F. Supp. 2d at 511 (finding that the balance of hardships favored the plaintiff where the defendant would be required to stop performing copyrighted music without paying a license fee). Fourth, the public interest favors an injunction, as there is a "public interest reflected in the Constitutional protection of copyright, and the congressional enactment of the Copyright Act, is enhanced by issuance of a permanent injunction where copyright infringement has taken place." *Id.* Moreover, "it is difficult to conceive of how such a permanent injunction will harm a defendant who has willfully violated the copyright law." *Id.* The same logic applies to defendant's willful violation of the Lanham Act.

For these reasons, the undersigned recommends that Sci-Hub, together with its officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with them, be jointly and severally enjoined from: (1) copying, distributing, altering, displaying, hosting, selling and/or promoting any of ACS's copyrighted works; (2) using any copy or colorable imitation of the ACS trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, printing, importation, production, circulation, or distribution of any product or service, in such fashion as to relate or connect such product in any way to ACS, or to any goods sold, manufactured, sponsored, approved by, or connected with ACS; and (3) engaging in any other activity constituting an infringement of ACS's trademarks or copyrighted works, or constituting any damage to ACS's name, reputation, or goodwill.  In addition, the undersigned recommends that it be ordered that any person or entity in privity with Sci-Hub and with notice of the injunction, including any Internet search engines, web hosting and Internet service providers, domain name registrars, and domain name registries, cease facilitating access to any or all domain names and websites through which Sci-Hub engages in unlawful access to, use, reproduction, and distribution of ACS's trademarks or copyrighted works.  Finally, the undersigned recommends that it be ordered that the domain name registries and/or registrars for Sci-Hub's domain names and websites, or their technical administrators, shall place the domain names on registryHold/serverHold or such other status to render the names/sites non-resolving.

**Statutory Damages**

ACS seeks a judgment against Sci-Hub in the amount of $4,800,000, which is based on infringement of a "representative sample of publications" containing ACS's copyrighted works, multiplied by the statutory limit of $150,000 for each of the 32 works.  (Docket no. 17 at 19–20).

12

ACS notes that it could have sought "well over $300 million" based on the total number of infringed works, but is only seeking statutory damages as a measure of restraint. (Docket no. 17 at 20, n.2). ACS does not seek damages for trademark counterfeiting or attorney's fees. (Docket no. 17 at 20, n.2).

Pursuant to 17 U.S.C. § 504(c)(1), a copyright owner may recover "an award of statutory damages for all infringements involved in the action, [and] with respect to any one work, . . . in a sum of not less than $750 or more than $30,000 as the court considers just" for unintentional infringement. For willfully committed infringement, the court "may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). The court can consider the deterrent effect of statutory damages, so that the defendant and other potential infringers are "put on notice that it costs less to obey the copyright laws than to violate them." *EMI Apr. Music, Inc.*, 618 F. Supp. 2d at 508 (citing *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1003 (E.D.Va. 1985)).

Sci-Hub's actions merit a strong deterrent. This court has previously awarded the maximum statutory rate for willful infringement, noting the need to "preserve the integrity of the [copyrighted work] and deter similar actors in future." *Graduate Management Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003). Defendant operates through multiple domain names to avoid identification and being shut down, and has engaged in repeated infringement. (FAVC ¶ 50). Moreover, defendant not only admits to the theft of ACS's copyrighted works, but openly brags that it is violating ACS's intellectual property rights by providing "access to hundreds of thousands [of] research papers every day, effectively bypassing any paywalls and restrictions." (FAVC ¶ 33). Finally, Sci-Hub's course of conduct suggests the need to deter other potential infringers: even after receiving a default judgment against it on June

13

21, 2017 in the Southern District of New York for $15 million (100 copyrights at the maximum

statutory rate of $150,000), *Elsevier Inc., et al. v. Sci-Hub, et al.*, No. 15-cv-4282-RWS

(S.D.N.Y. June 21, 2017), Sci-Hub continues to infringe ACS's copyrighted works. (Docket no.

17 at 21). For these reasons, the undersigned recommends that ACS be awarded $4,800,000 in

statutory damages against Sci-Hub for the willful infringement of 32 of plaintiff's copyrighted

works at the maximum statutory rate of $150,000 for each infringing work.

## Conclusion

For the foregoing reasons, the undersigned recommends that a default judgment be

entered in favor of ACS and against Sci-Hub pursuant to Count I alleging copyright infringement

and Count III alleging trademark counterfeiting. The undersigned further recommends that an

order be entered dismissing without prejudice Counts II, IV, and V against Sci-Hub, and

dismissing without prejudice Counts I–V as to separate defendants John Does 1–99. The

undersigned recommends that Sci-Hub, together with its officers, directors, principals, agents,

servants, employees, successors and assigns, and all those in active concert or participation with

them, are jointly and severally be enjoined from: (1) copying, distributing, altering, displaying,

hosting, selling and/or promoting any of ACS's copyrighted works; (2) using any copy or

colorable imitation of the ACS trademarks in connection with the promotion, advertisement,

display, sale, offering for sale, manufacture, printing, importation, production, circulation, or

distribution of any product or service, in such fashion as to relate or connect such product in any

way to ACS, or to any goods sold, manufactured, sponsored, approved by, or connected with

ACS; and (3) engaging in any other activity constituting an infringement of ACS's trademarks or

copyrighted works, or constituting any damage to ACS's name, reputation, or goodwill. In

addition, the undersigned recommends that it be ordered that any person or entity in privity with

14

Sci-Hub and with notice of the injunction, including any Internet search engines, web hosting and Internet service providers, domain name registrars, and domain name registries, cease facilitating access to any or all domain names and websites through which Sci-Hub engages in unlawful access to, use, reproduction, and distribution of ACS's trademarks or copyrighted works. The undersigned further recommends that it be ordered that the domain name registries and/or registrars for Sci-Hub's domain names and websites, or their technical administrators, shall place the domain names on registryHold/serverHold or such other status to render the names/sites non-resolving. Finally, the undersigned recommends that ACS be awarded statutory damages of $4,800,000 ($150,000 for each of the 32 representative publications).

## Notice to Parties

The plaintiff is required to send this proposed findings of fact and recommendations to the defendant via the email addresses service@todaynic.com, admin@sci-hub.io, support@scihub.org, sci-hub.org@gmail.com, and 522ab14bo3mfc7dy@5225b4d0pi3627q9.private.whois.net; mail a copy to Zhuhai Yingxun Kejhi Limited, Zhuhai 5190000 (CN); and file a certificate of compliance indicating the date those actions were undertaken, which will start the fourteen (14) day period for objections. The parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 28th day of September, 2017.

                                           /s/
                                John F. Anderson
                                United States Magistrate Judge

Alexandria, Virginia

16